# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. S2 4:15 CR 348 HEA / DDN |
| ) | |
| THOMAS THADEUS SZCZERBA, ) | |
| et al., ) | |
| ) | |
| Defendants. ) | |

## ORDER AND RECOMMENDATION

On April 27, 2016, this action came before the court for an evidentiary hearing on the pretrial motions of the parties, which were referred to the undersigned Magistrate Judge under 28 U.S.C. § 636(b). Due to matters raised by defendant Thomas Szczerba following the evidentiary hearing, a supplemental hearing was held on May 26, 2016.

Pending are (a) the oral motions of defendant Szczerba to suppress arguably suppressible evidence generally (docs. 23, 65, 97); the documentary motions of defendant Szczerba to suppress physical evidence obtained during the search of the hotel room (doc. 85), and to suppress evidence obtained during the search of the motor vehicle (doc. 86); and (b) the oral motions of the government for a determination by the court of the admissibility of any arguably suppressible evidence (docs. 25, 66, 98).

From the record adduced during the initial evidentiary suppression hearing and the supplemental hearing, the undersigned makes the following findings of fact and conclusions of law:

### Facts

1. On July 16, 2015, St. Louis Metropolitan Police Detective Sargent Patricia Nijkamp was assigned to investigate human trafficking and sexual exploitation. On that date, at approximately 6:00 a.m., in conjunction with a 911 emergency phone call, Det.

Richard Brown contacted Sgt. Nijkamp and advised her that a woman, hereinafter referred to as "BM"[1], had been seen running barefoot from her pimp and that the woman was now hiding behind a dumpster. Sgt. Nijkamp was told that BM, who was approximately 22 years old, had been interviewed by Officer Lawrence Matthews, and that BM, while she was hiding behind the dumpster, had a friend call the police for her. After speaking with Officer Matthews, Sgt. Nijkamp directed officers to take BM to a local hospital for medical attention. Sgt. Nijkamp herself went to the hospital to interview BM.

2. At the hospital BM gave Sgt. Nijkamp the physical descriptions of two people who were requiring her to be a prostitute, one of whom was her male pimp. She identified the two as Thomas Szczerba and Keisha Edwards, and she described their physical characteristics. BM told Sgt. Nijkamp that she was not from Missouri but had come from Houston, Texas. Before Texas, she had lived in Louisiana. BM told Sgt. Nijkamp that Szczerba and Edwards brought her from Texas to Missouri, and that these were the people she had run away from earlier that morning. BM told the officer the ways Szczerba prevented her from using her cell phone; that he prevented her from eating or resting unless she had earned $1,000.00 each day; and that he forced her to work during her menstrual period. BM told the officer that Szczerba and Edwards were then in Room 359 of the Westin Hotel in St. Louis.[2] BM also stated that Szczerba and Edwards had transported her from Texas to Missouri in a gold colored Mercedes automobile. Sgt. Nijkamp believed that BM's information was reliable, because she appeared scared and shaken up by her experiences. Police later located the gold Mercedes in the Westin Hotel parking lot.

---

[1] Upon oral motion of counsel for the government, the undersigned ordered that the transcript of this hearing refer to the subject woman only by these initials.

[2] Sgt. Nijkamp determined that Room 359 was registered to Keisha Edwards.

3. While at the hospital, Sgt. Nijkamp directed other officers to go to the Westin Hotel. Sgt. Nijkamp also provided these officers the physical descriptions of Szczerba and Edwards given to her by BM. She then went to the hotel herself.

4. Sgt. Nijkamp arrived at the hotel at approximately 11:00 a.m. She went to Room 359. There she located the two suspects, Thomas Szczerba and Keisha Edwards, whom she identified by the descriptions BM had given her. Szczerba and Edwards were then arrested. Nijkamp asked the two whether they would consent to a search of Room 359 so the officers would not have to get a search warrant. Szczerba and Edwards refused to consent. Nijkamp observed the condition of the room's interior. She then locked and secured the room in order to preserve it while she went to apply for a search warrant.

5. The police found the gold Mercedes vehicle that BM had described in the hotel parking lot. Sgt. Nijkamp ran the vehicle's Texas license plate and found that the vehicle was registered to Keisha Edwards.

6. Sgt. Nijkamp thereafter went to apply for a Missouri circuit court search warrant for the vehicle and the hotel room.

7. In her sworn, written affidavit in support of a search warrant, Sgt. Nijkamp described the investigatory facts the police had developed. The affidavit stated the following. Around 5:27 a.m. on July 15, 2015, victim BM, who had been born in 1992, called 911 after escaping from two people who had forced her to prostitute herself. BM said her traffickers' location was Room 359 in the Westin Hotel at 811 Spruce Avenue in the City of St. Louis. The room was rented in Keisha Edwards's name. The affidavit described the information provided by BM that, five to six weeks earlier she reluctantly began prostituting herself and giving the proceeds to Szczerba, and that Szczerba and Edwards photographed BM and advertised her availability on the internet. BM told the detective that they had traveled to Chicago, Illinois, and Wisconsin, before arriving in St. Louis five days earlier. During this time, BM was in a constant state of fear for her safety because Szczerba was threatening to beat her. The affidavit described other violent actions Szczerba used to force BM to prostitute herself. Szczerba forced BM to prostitute

3

herself during her menstrual cycle by using a makeup sponge as a feminine hygiene product. When Szczerba wasn't able to remove the makeup sponge from BM's vaginal cavity with tweezers, BM screamed with pain to such an extent that other hotel residents complained and Szczerba drove her to a hospital for treatment. BM told the police that there were numerous items of evidence of the crime of trafficking for the purpose of sexual exploitation in the suspects' hotel room and vehicle; these items of evidence included "cell phones, lap top computers, large amounts of cash, condoms, and lubricant as well as the receipts and paperwork." (Gov. Ex. 1 at 1–2, Doc. 102-1.)

The affidavit concluded:

> With these facts in mind, I respectfully request that a search warrant be granted [(sic)] Westin Hotel Room #359, located in the City of St. Louis at 811 Spruce Avenue as well as the vehicle used in this crime, a Gold 2003 Mercedes having a Texas License plate of CMV7329 and a VIN #WDVNG70J83A373917 registered to suspect Edwards.

(Id.)

8. At 4:10 p.m. on July 16, 2015, a St. Louis City circuit judge issued the search warrant. The operative language of the warrant was as follows:

> [a][3] Whereas, a complaint in writing, duly verified by oath, has been filed with the undersigned Judge of this court, stating upon information and belief, that the following to wit:
>
> [b] Hotel Room #359 of the Westin Hotel, Located at 811 Spruce Avenue, St. Louis, MO. Registered to suspect Keisha Edwards, DOB    /1992.
>
> [c] 2003 Golf Mercedes vehicle having a Texas license plate of CMV7329 and VIN #[**********] parked at or near 811 Spruce Avenue and registered to Keisha Edwards, DOB   /1992.
>
> [d] Whereas, the Judge of this Court from the sworn allegations of said complaint and from the supporting written affidavits filed therewith has found that there is probable cause to believe that the allegations of the complaint to be true and probable cause for the issuance of a search warrant therein;

---

[3] The undersigned has applied bracketed lettering to the separate paragraphs of the warrant to facilitate the discussion of the parties' arguments below.

> [e] Now, therefore, **these are to command you that you search the said person above described** within 10 days after the issuance of this warrant by day or night, and take with you, if need be, the power of your county, and if said above described property or any part thereof be found on the said person by you, that you seize the same and take same into your possession, making a complete and accurate inventory of the property so taken by you in the presence of the person from whose possession the same is taken and giving such person a copy of this warrant.

(Id. at 3) (bolding added).

9. After the search warrant was issued, Sgt. Nijkamp read the warrant and believed it authorized the police to search Room 359 and the gold Mercedes, and to seize from those places items that related to the current investigation of human sex trafficking.

10. At approximately 5:00 p.m. on July 16, 2015, the police searched Room 359, the gold Mercedes vehicle, and the person of Keisha Edwards. On July 22, 2015, the inventory of the items seized was filed with the Clerk of the Circuit Court. (Id. at 4–5.)

11. a. From Room 359 were seized triangle makeup sponges, iPhones, various phone chargers, various "sex toys," a bottle of medicine, medical paperwork, two Mercedes vehicle keys, packaging for lubricant and condoms, condoms, package of cleansing tissue, dental dams, a pink bag containing condoms, a Kindle, a Bose speaker,[4] a watch belonging to Szczerba, and a Mophie brand battery charger.

b. From the gold Mercedes vehicle were seized various receipts and records, a blue date book, a black notebook, and a black whip.

c. From the person of Keisha Edwards Items were seized 2 iPhones.

d. The gold Mercedes vehicle was seized from the parking lot. (Id.)

12. Szczerba's wallet was also seized during the investigation. The wallet contained a handwritten note with BM's personal information, 3 gift cards, a document

---

[4] The record is unclear about what type of Bose device was seized. The undersigned takes judicial notice that Bose manufactures electronic audio speakers and related devices. Fed. R. Evid. 201; https://www.bose.com/en_us/index.html (last viewed June 6, 2016).

stating a Scottrade account number, a Pinnacle Entertainment card, a Casino card, a Trop Advantage card, and a Trop Awards card. Based upon certain papers and records seized from Szczerba's wallet, the grand jury issued subpoenas to third parties for certain financial data and information.

## **DISCUSSION**

Defendant Szczerba argues (1) the plain language of the search warrant authorized the police to search only the person of Keisha Edwards, not Room 359 or the gold Mercedes automobile; (2) even if the warrant was valid, certain items were seized from outside its lawful scope. The specific seized items defendant complains were outside the scope of the warrant are his wallet, Scottrade documents, gambling casino cards, keys to the gold Mercedes found inside Room 359, a makeup sponge, cell phone chargers, a black whip, a pill bottle, and documents described in the warrant inventory and return as "paperwork."

The government argues that (a) defendant Szczerba has no standing to contest the seizure of items from the gold Mercedes, (b) the warrant was legally sufficient, and (c) items seized from outside the scope of the warrant were nevertheless evidence of criminal activity observed by the police in plain view.

### **Defendant Szczerba's standing**

Defendant Szczerba has standing to complain about the seizure of items from both the gold Mercedes vehicle and Room 359. The government does not contest Szczerba's privacy interest in the hotel room and, therefore, his standing to challenge that search. However, the government argues he has no standing to challenge the search of the gold Mercedes. The court disagrees.

In order to assert a Fourth Amendment violation regarding a vehicle, the defendant must prove that he has a sufficiently close connection to the vehicle. United States v. Gomez, 16 F.3d 254, 256 (8th Cir. 1994). Several factors are weighed when assessing a defendant's standing, including:

6

ownership; possession and/or control of the area searched or item seized; historical use of the property or item; ability to regulate access; the totality of the circumstances surrounding the search; the existence or nonexistence of a subjective anticipation of privacy; and the objective reasonableness of the expectation of privacy considering the specific facts of the case.

Id. A defendant moving to suppress evidence has the burden to show that he has a reasonable expectation of privacy in the place searched and he cannot "rely on the positions the government has taken in the case but must present evidence of his standing, or at least . . . point to specific evidence in the record which the government presented [that] established his standing." United States v. Maxwell, 778 F.3d 719, 732 (8th Cir. 2015). For example, the Eighth Circuit upheld the district court's finding in Gomez, involving a motor vehicle, that the defendant had no possessory interest and, therefore, no standing in the vehicle for several reasons, i.e., he did not have permission to use the car; he did not know the owner; and he denied all interest in the drugs found within the car. United States v. Gomez, 16 F.3d at 256.

In the present case, the record establishes that defendant Szczerba had a sufficiently close relationship to the gold Mercedes to establish he has standing to complain about the seizure of items from it. While the vehicle was not registered to Szczerba, he had free access to use it. The victim told Sgt. Nijkamp that the keys were kept in the hotel room where Szczerba, Edwards, and she were staying. Szczerba's access to the car was also demonstrated when he drove BM to the hospital. Clearly, Szczerba controlled substantial access to the vehicle. There is no evidence that Edwards ever prevented Szczerba from using the vehicle as he wished.

Unlike the circumstances in Gomez, Szczerba could use the gold Mercedes when he wished. Based on the totality of the circumstances regarding defendant Szczerba's access to the vehicle, the undersigned concludes he had a reasonable expectation of privacy in the gold Mercedes and, therefore, standing to challenge the seizure of items from it.

## The language of the search warrant

Defendant Szczerba argues that the operative language of the search warrant authorized a search only of the person of Keisha Edwards, and not a search of Room 359 or a search of the gold Mercedes. Therefore, the searches of the Mercedes and of Room 359 were warrantless.

The government argues that the subject search warrant was based upon probable cause to search the gold Mercedes and Room 359 established by Sgt. Nijkamp's affidavit which was signed by the issuing judge and incorporated into the warrant issued by the same judge. The government argues that the language of the warrant which authorized the search of Keisha Edwards was a clerical error which should be disregarded.

The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV. The warrant requirement of the Fourth Amendment requires that the warrant be founded on probable cause, particularly describe the place(s) to be searched, and particularly describe the items to be seized. Groh v. Ramirez, 540 U.S. 551, 557 (2004) (ruling that the warrant was "plainly invalid" because it lacked a description of the items to be seized).

An affidavit establishes probable cause to support the issuance of a search warrant when it "sets forth facts sufficient to create a fair probability that evidence of a crime will be found in the place to be searched"; "[a]dditionally, probable cause may be established by the observations of trained law enforcement officers or by circumstantial evidence." United States v. Terry, 305 F.3d 818, 822-23 (8th Cir. 2002). A finding of probable cause may be founded on information from a reliable individual, especially, as in the present case, when the police are able to corroborate the individual's information. United States v. Draper, 358 U.S. 307, 313 (1959). For these determinations this reviewing court should look to the totality of the relevant circumstances. Illinois v. Gates, 462 U.S. 213,

238 (1983). "Applications and affidavits for issuance of a warrant should be examined under a common sense approach and not in a hypertechnical fashion." United States v. Williams, 10 F.3d 590, 593 (8th Cir. 1993) (citing United States v. Ventresca, 380 U.S. 102, 109 (1965)).

In this case, Sgt. Nijkamp's affidavit provided sufficient information for the circuit court to find probable cause to believe that evidence of human sex trafficking would be found in Room 359 and in the gold Mercedes. BM, Sgt. Nijkamp's first-person informant and victim of the described perpetrators, told the officer that all three had been and were residing in Room 359 and that they had traveled in the gold Mercedes through several states for her to engage in prostitution. BM provided a wealth of factually specific information about these unlawful activities and much information about the evidence that would be found in the vehicle and in the room.

Whether or not the officer's affidavit established probable cause, however, is not the cardinal issue before the court. The issue is whether the state circuit court issued a constitutionally sufficient and valid search warrant following the submission of the affidavit.

A constitutionally sufficient warrant must provide "enough description so that an officer executing the search can reasonably ascertain and identify the target of the search with no reasonable probability of searching another premises in error." United States v. Valentine, 984 F.2d 906, 909 (8th Cir. 1993).

The warrant in this case did not accurately describe the locations intended by the affidavit to be searched and it did not particularly describe the items to be seized. The specific language of the warrant did not authorize searching Room 359 or the gold Mercedes. In fact, the warrant's drafter appears to have omitted language from the warrant. First, paragraphs [a]–[c] merely refer to Room 359 and the gold Mercedes. The relevance of the room and the vehicle is not stated in the warrant. Rather, paragraph [d] of the warrant stated that from the supporting document the court "has found that there is probable cause to believe that the allegations" in the supporting document are true and establish "probable cause for the issuance of a search warrant therein." (Doc. 102-1 at 3.)

9

The specific operative language of the search warrant in paragraph [e] authorized the search only of the "said person above described." The language of the warrant involved more than a typographical error, as the government urges. On the face of the warrant the only person "above described" in the warrant is Keisha Edwards. In the warrant, Keisha Edwards is not described as the location of items to be seized, but only as the person in whose name the gold Mercedes and Room 359 were registered. Furthermore, while paragraph [d] of the warrant referred to the "supporting written affidavit[]," it did so only to identify it as the basis for the finding of probable cause. (Id.) ("[w]hereas, the Judge of this Court from the sworn allegations of said complaint and from the supporting written affidavits filed therewith has found that there is probable cause").

An affidavit which is incorporated into a search warrant may provide the constitutionally required particularity for the warrant. Cf. United States v. Hamilton, 591 F.3d 1017, 1024–27 (8th Cir. 2010) (warrant not approved because the incorporating language was vague); United States v. Gamboa, 439 F.3d 796, 806–07 (8th Cir. 2006) (the warrant "clearly incorporated" the document that provided the required particularity). A warrant *with no incorporating language*, such as the one at bar, cannot rely on the underlying affidavit's language to provide the constitutionally required language particularly describing the place(s) to be searched and the items to be seized. Groh v. Ramirez, 540 U.S. at 558-560.

The government relies on United States v. Hamilton. In Hamilton, evidence was seized pursuant to the execution of a state court search warrant that was argued to be legally insufficient because the officer who drafted it "unknowingly deleted the list of items to be seized from the face of the warrant." 591 F.3d at 1020-21. The relevant facts were further described by the Court of Appeals:

> However, the items were specified in Detective Rexford's affidavit, which accompanied the warrant application at the time the circuit judge signed and issued the warrant. Although the warrant referenced the affidavit with the words "See Attached Affidavit," the affidavit was not physically attached to the warrant when the warrant was executed on May 30, 2007,

10

> and there is no evidence in the record that the affidavit was available at the
> scene of the search. Detective Rexford executed the warrant and was aware
> of the items listed in the affidavit to be seized because he had drafted the
> affidavit.

Id. at 1021. The Eighth Circuit did not constitutionally approve that warrant, in relevant part because the language of the warrant was unclear about what part of the affidavit the judge incorporated into the warrant. Id. at 1027. Rather, suppression of the evidence was avoided by an application of the officer's good faith reliance on the warrant. Id. at 1030.

In the case at bar, no language of the search warrant incorporated into the warrant to any reasonable degree any information from the underlying affidavit. In the circumstances of this case, merely acknowledging the existence of the affidavit as the basis for the finding of probable cause is insufficient to incorporate the affidavit into the warrant.

The searches in this case were not authorized by the subject search warrant.

### Good faith reliance on the issued warrant

This court may allow the use of evidence seized in the execution of a constitutionally insufficient warrant, if the officers acted in good faith after obtaining the warrant upon a showing of probable cause from a neutral and detached magistrate. See United States v. Leon, 468 U.S. 897, 922–23 (1984). Suppressing the evidence seized pursuant to a constitutionally deficient warrant is appropriate where a deterrent against willful or negligent conduct resulting in the deprivation of a defendant's rights is needed. See Leon, 468 U.S. at 919 (quoting United States v. Peltier, 422 U.S. 531, 539 (1975)).

The good faith exception to the exclusionary rule should not be applied if: (1) the affidavit upon which the warrant relies was knowingly or recklessly false; (2) the issuing judge was merely a rubber stamp for the police, instead of a neutral and detached judicial officer; (3) there is no substantial basis for a finding of probable cause; or (4) the warrant itself is so facially deficient that no executing officer could presume its validity. U.S. v. Leon, 468 U.S. at 914–15; United States v. LaMorie, 100 F.3d 547, 555 (8th Cir. 1996).

11

The exclusionary rule is not intended to punish the errors of issuing judges and should only be applied "in those unusual cases in which exclusion will further the purposes of the exclusionary rule." U.S. v. Leon, 468 U.S. at 916, 918.

In deciding whether or not the Leon good faith avoidance of the exclusionary rule should be applied, the court should look at the totality of the circumstances, including the investigating officers' "conduct in obtaining and executing the warrant and what the officer[s] knew or should have known." United States v. Wright, 777 F.3d 635, 639 (3rd Cir. 2015) (quoting United States v. Tracey, 597 F.3d 140, 147 (3rd Cir. 2010)).

Sgt. Nijkamp and the other officers who searched Room 359 and the gold Mercedes reasonably relied on the search warrant as authority for their searches. While paragraphs [b] and [c] of the warrant, which clearly focus on Room 359 and the gold Mercedes, appear detached from the rest of the warrant, they clearly and immediately present to the reader's eye the two locations that Sgt. Nijkamp knew were the subjects of her affidavit and were the expected locations for authorized searches. While paragraph [e] refers to searching "the said person above described," Sgt. Nijkamp knew that Keisha Edwards was a suspect in the investigation. Further, the warrant refers to Sgt. Nijkamp's affidavit, which clearly describes the locations to be searched (the hotel room and the vehicle) and the items to be seized (cell phones, lap top computers, large amounts of cash, condoms, lubricant, and the receipts and paperwork relating to the alleged crime). (Doc. 102-1 at 3.)

Furthermore, Sgt. Nijkamp was most mindful of the Fourth Amendment warrant requirement. She first asked the two suspects whether they would consent to a search of Room 359 to avoid her having to apply for a warrant. When they refused to consent, she secured both the hotel room and the vehicle and then applied for a search warrant. Her affidavit concealed no facts from the judge. Nothing other than the warrant document itself has indicated that the issuing judge did not act as a neutral and detached judicial officer. And there was ample probable cause in the supporting affidavit for the issuance of a constitutionally valid warrant.

Therefore, even with the defective language of the warrant, the good faith doctrine of Leon should be applied to avoid the exclusionary rule.

## Scope of the searches

Defendant Szczerba argues that the seized items were not within the Fourth Amendment scope of the items to be seized. The undersigned disagrees.

In the execution of a search warrant, officers are constitutionally authorized to seize any object in plain view, in a place where the officers lawfully are present, if that object's incriminating nature is immediately apparent. United States v. Rodriguez, 711 F.3d 928, 936 (8th Cir. 2013). The incriminating nature of an object may be based on the knowledge of the seizing officers. See United States v. Banks, 514 F.3d 769, 776 (8th Cir. 2008) (seizure of a gun case upheld, because one of the officers at the seizure knew defendant was a felon and a gun case is likely to hold a firearm). "If an article is already in plain view, neither its observation nor its seizure would involve any invasion of privacy." Horton v. California, 496 U.S. 128, 133–34 (1990).

As discussed above, the search warrant clearly referenced Sgt. Nijkamp's affidavit, which described the places to be searched and the items to be seized. Items specifically listed in the affidavit included "cell phones, lap top computers, large amounts of cash, condoms, and lubricant as well as the receipts and paperwork relating to the Crime of 'Trafficking for the Purpose of Sexual Exploitation.'" (Gov. Ex. 1 at 1, Doc. 102-1 at 1.) The items actually seized from the hotel room by Sgt. Nijkamp included makeup sponges; four iPhones; a MacBook Pro; an Alcatel phone; $144 in US currency; various battery chargers; various sex toys; medicine prescribed to and medical paperwork for "Avery Monroe"; lubricant; various condoms; a Kindle; a Bose audio speaker device; defendant Szczerba's watch; and, a Mophie battery charger. (Id. at 5.) From inside the vehicle, police seized various receipts and paperwork, an aqua blue datebook, a black medium sized notebook, and a black whip. (Id.)

Defendant Szczerba describes the items seized in the hotel as a "smorgasbord" of items, all of which should be suppressed. (Doc. 85 at 5.) In the circumstances of this

case, including what BM told Sgt. Nijkamp, all of the seized items reasonably appear to be evidence of defendant Szczerba's trafficking in sexual exploitation. Defendant's wallet and documents in it are clearly contained within "receipts and paperwork." The makeup sponges were vividly described by the victim to Sgt. Nijkamp as being used to ensure she would continue to prostitute herself while on her menstrual cycle. The four iPhones, MacBook Pro, Alcatel cell phone, and Kindle fall within the category of digital devices ("cell phones" and "lap top computers"). The various sex toys, lubricant, and condoms seized are plainly evidence of the alleged crime, regardless of their otherwise legal nature. The prescription medication and medical records for "Avery Monroe" were reasonably seen as evidence of BM's hospital visit after defendant Szczerba allegedly attempted to remove a makeup sponge being used as a feminine hygiene product with a pair of tweezers. (Gov. Ex. 1 at 1, Doc. 102-1 at 1.) Other items seized are reasonably seen as evidence of defendant Szczerba's residence in Room 359: his watch, electronic device chargers, and the Bose device.

## ORDER AND RECOMMENDATION

For the reasons set forth above,

**IT IS HEREBY ORDERED** that the motions of the United States for a determination by the court of the admissibility or not of the government's arguably suppressible evidence (docs. 25 oral, 66 oral, 98 oral) are denied as moot.

**IT IS HEREBY RECOMMENDED** that the motions of defendant Thomas Szczerba to suppress evidence (docs. 23 oral, 65 oral, 85, 86, 97 oral) all be denied.

The parties have 14 days to file written objections to this Order and Recommendation. The failure to file timely written objections may waive the right to appeal issues of fact.

                                    **/S/   David D. Noce**_____
                                    **UNITED STATES MAGISTRATE JUDGE**

Signed and filed on June 7, 2016.